

# United States Department of Justice

*United States Attorney*
*Southern District of West Virginia*

*Robert C. Byrd United States Courthouse*
*300 Virginia Street, East*
*Suite 4000*
*Charleston, WV 25301*
*1-800-659-8726*

*Mailing Address*
*Post Office Box 1713*
*Charleston, WV 25326*
*304-345-2200*
*FAX: 304-347-5104*

**FILED**

**JUL 2 1 2014**

TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

May 19, 2014

Thomas W. Smith, Esquire
405 Capitol Street
Suite 701
Charleston, West Virginia 25301

      Re:  United States v. Chadwick J. Lusk

Dear Mr. Smith:

      This will confirm our conversations with regard to your client, Chadwick J. Lusk.  As a result of these conversations, it is agreed by and between the United States and Mr. Lusk as follows:

      1.    **CHARGING AGREEMENT.**  Mr. Lusk agrees to waive his right pursuant to Rule 7 of the Federal Rules of Criminal Procedure to be charged by indictment and will consent to the filing of a single-count information to be filed in the United States District Court for the Southern District of West Virginia, a copy of which is attached hereto as "Plea Agreement Exhibit A."

      2.    **RESOLUTION OF CHARGES.**  Mr. Lusk will plead guilty to violations of 18 U.S.C. §§ 1341, 1346 and 2 (honest services mail fraud and aiding and abetting) as charged in said information.

      3.    **MAXIMUM POTENTIAL PENALTY.**  The maximum penalty to which Mr. Lusk will be exposed by virtue of this guilty plea is as follows:

      (a)  Imprisonment for a period of 20 years;

      (b)  A fine of $250,000, or twice the gross pecuniary gain or twice the gross pecuniary loss resulting from defendant's conduct, whichever is greater;

_____
Defendant's
Initials

(c)  A term of supervised release of three years;

(d)  A mandatory special assessment of $100 pursuant to 18 U.S.C. § 3013; and

(e)  An order of restitution pursuant to 18 U.S.C. §§ 3663A and 3664, or as otherwise set forth in this plea agreement.

4.  **SPECIAL ASSESSMENT.**  Prior to the entry of a plea pursuant to this plea agreement, Mr. Lusk will tender a check or money order to the Clerk of the United States District Court for $100, which check or money order shall indicate on its face the name of defendant and the case number.  The sum received by the Clerk will be applied toward the special assessment imposed by the Court at sentencing.  Mr. Lusk will obtain a receipt of payment from the Clerk and will tender a copy of such receipt to the United States, to be filed with the Court as an attachment to this plea agreement.  If Mr. Lusk fails to provide proof of payment of the special assessment prior to or at the plea proceeding, the United States will have the right to void this plea agreement.  In the event this plea agreement becomes void after payment of the special assessment, such sum shall be promptly returned to Mr. Lusk.

5.  **RESTITUTION.**  Notwithstanding the offense of conviction, Mr. Lusk agrees that he owes restitution in the amount of $230,000 to Arch Coal, Inc. and agrees to pay such restitution, with interest as allowed by law, to the fullest extent financially feasible.  In aid of restitution, Mr. Lusk further agrees as follows:

(a)  Mr. Lusk agrees to fully assist the United States in identifying and locating any assets to be applied toward restitution and to give signed, sworn statements and testimony concerning assets upon request of the United States.

(b)  Mr. Lusk will fully complete and execute, under oath, a Financial Statement and a Release of Financial Information on forms supplied by the United States and will return these completed forms to counsel for the United States within seven calendar days from the date of the signing

Defendant's
Initials

of this plea agreement.

(c)   Mr. Lusk agrees not to dispose of, transfer or otherwise encumber any real or personal property which he currently owns or in which he holds an interest.

(d)   Mr. Lusk agrees to fully cooperate with the United States in the liquidation of assets to be applied towards restitution, to execute any and all documents necessary to transfer title of any assets available to satisfy restitution, to release any and all right, title and interest he may have in and to such property, and waives his right to exemptions under the Federal Debt Collection Procedures Act upon levy against and the sale of any such property.

(e)   Mr. Lusk agrees not to appeal any order of the District Court imposing restitution unless the amount of restitution imposed exceeds the amount set forth in this plea agreement. However, nothing in this provision is intended to preclude the Court from ordering Mr. Lusk to pay a greater or lesser sum of restitution in accordance with law.

6.    **PAYMENT OF MONETARY PENALTIES.** Mr. Lusk agrees not to object to the District Court ordering all monetary penalties (including the special assessment, fine, court costs, and any restitution that does not exceed the amount set forth in this plea agreement) to be due and payable in full immediately and subject to immediate enforcement by the United States. So long as the monetary penalties are ordered to be due and payable in full immediately, Mr. Lusk further agrees not to object to the District Court imposing any schedule of payments as merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment.

7.    **COOPERATION.** Mr. Lusk will be forthright and truthful with this office and other law enforcement agencies with regard to all inquiries made pursuant to this agreement, and will give signed, sworn statements and grand jury and trial testimony upon request of the United States. In complying with this provision, Mr. Lusk may

Defendant's
Initials

have counsel present except when appearing before a grand jury. Further, Mr. Lusk agrees to be named as an unindicted co-conspirator or co-schement, and unindicted aider and abettor, as appropriate, in subsequent indictments or informations.

8. **USE IMMUNITY.** Unless this agreement becomes void due to a violation of any of its terms by Mr. Lusk, and except as expressly provided for in paragraph 10 below, nothing contained in any statement or testimony provided by Mr. Lusk pursuant to this agreement, or any evidence developed therefrom, will be used against Mr. Lusk, directly or indirectly, in any further criminal prosecutions or in determining the applicable guideline range under the Federal Sentencing Guidelines.

9. **LIMITATIONS ON IMMUNITY.** Nothing contained in this agreement restricts the use of information obtained by the United States from an independent, legitimate source, separate and apart from any information and testimony provided pursuant to this agreement, in determining the applicable guideline range or in prosecuting Mr. Lusk for any violations of federal or state laws. The United States reserves the right to prosecute Mr. Lusk for perjury or false statement if such a situation should occur pursuant to this agreement.

10. **STIPULATION OF FACTS AND WAIVER OF FED. R. EVID. 410.** The United States and Mr. Lusk stipulate and agree that the facts comprising the offense of conviction and relevant conduct include the facts outlined in the "Stipulation of Facts," a copy of which is attached hereto as "Plea Agreement Exhibit B."

Mr. Lusk agrees that if he withdraws from this agreement, or this agreement is voided as a result of a breach of its terms by Mr. Lusk, and Mr. Lusk is subsequently tried on any of the charges in the information, the United States may use and introduce the Stipulation of Facts in the United States case-in-chief, in cross-examination of Mr. Lusk or of any of his witnesses, or in rebuttal of any testimony introduced by Mr. Lusk or on his behalf. Mr. Lusk knowingly and voluntarily waives, see United States v. Mezzanatto, 513 U.S. 196 (1995), any right he has pursuant to Fed. R. Evid. 410 that would prohibit such use of the Stipulation of Facts. If the Court does not accept the plea agreement through no fault of

_____
Defendant's
Initials

the defendant, or the Court declares the agreement void due to a breach of its terms by the United States, the Stipulation of Facts cannot be used by the United States.

The United States and Mr. Lusk understand and acknowledge that the Court is not bound by the Stipulation of Facts and that if some or all of the Stipulation of Facts is not accepted by the Court, the parties will not have the right to withdraw from the plea agreement.

11. **AGREEMENT ON SENTENCING GUIDELINES.** Based on the foregoing Stipulation of Facts, the United States and Mr. Lusk agree that the following provisions of the United States Sentencing Guidelines apply to this case.

Information:

    USSG § 2B1.1

    Base Offense Level                          7

    Loss
        (Honest services fraud - Gain)
        ($200,000 > $400,000)                   12

    Abuse of Position of Trust                  +2

    Adjusted Offense Level                      21

The United States and Mr. Lusk acknowledge and understand that the Court and the Probation Office are not bound by the parties' calculation of the United States Sentencing Guidelines set forth above and that the parties shall not have the right to withdraw from the plea agreement due to a disagreement with the Court's calculation of the appropriate guideline range.

12. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Mr. Lusk knowingly and voluntarily waives his right to seek appellate review of his conviction and of any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever including any ground set forth in 18 U.S.C. § 3742(a), except that

Defendant's
Initials

the defendant may appeal any sentence that exceeds the maximum penalty prescribed by statute. The United States also agrees to waive its right to appeal any sentence of imprisonment, fine, or term of supervised release imposed by the District Court, or the manner in which the sentence was determined, on any ground whatsoever, including any ground set forth in 18 U.S.C. § 3742(b), except that the United States may appeal any sentence that is below the minimum penalty, if any, prescribed by statute.

Mr. Lusk also knowingly and voluntarily waives the right to challenge his guilty plea and his conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.

The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

13. **WAIVER OF FOIA AND PRIVACY RIGHT.** Mr. Lusk knowingly and voluntarily waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without any limitation any records that may be sought under the Freedom of Information Act (FOIA), 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a, following final disposition.

14. **FINAL DISPOSITION.** The matter of sentencing is within the sole discretion of the Court. The United States has made no representations or promises as to a specific sentence. The United States reserves the right to:

(a)   Inform the Probation Office and the Court of all relevant facts and conduct;

(b)   Present evidence and argument relevant to the factors enumerated in 18 U.S.C. § 3553(a);

(c)   Respond to questions raised by the Court;

_____
                        Defendant's
                        Initials

(d)   Correct inaccuracies or inadequacies in the presentence
      report;

(e)   Respond to statements made to the Court by or on behalf
      of Mr. Lusk;

(f)   Advise the Court concerning the nature and extent of Mr.
      Lusk's cooperation; and

(g)   Address the Court regarding the issue of Mr. Lusk's
      acceptance of responsibility.

15.   **VOIDING OF AGREEMENT.**   If either the United States or Mr.
Lusk violates the terms of this agreement, the other party will have
the right to void this agreement. If the Court refuses to accept this
agreement, it shall be void.

16.   **ENTIRETY   OF   AGREEMENT.**   This   written   agreement
constitutes the entire agreement between the United States and Mr.
Lusk  in this matter.  There are no agreements, understandings or
recommendations as to any other pending or future charges against
Mr. Lusk in any Court other than the United States District Court
for the Southern District of West Virginia.

      Acknowledged and agreed to on behalf of the United States:

                              R. BOOTH GOODWIN II
                              United States Attorney


            By:   _____
                  MEREDITH GEORGE THOMAS
                  Assistant United States Attorney


            By:   _____
                  THOMAS C. RYAN
                  Assistant United States Attorney



                                          _____
                                          Defendant's
                                          Initials

I hereby acknowledge by my initials at the bottom of each of the foregoing pages and by my signature on the last page of this eight-page agreement that I have read and carefully discussed every part of it with my attorney, that I understand the terms of this agreement, and that I voluntarily agree to those terms and conditions set forth in the agreement.  I further acknowledge that my attorney has advised me of my rights, possible defenses, the Sentencing Guideline provisions, and the consequences of entering into this agreement, that no promises or inducements have been made to me other than those in this agreement, and that no one has threatened me or forced me in any way to enter into this agreement.  Finally, I am satisfied with the representation of my attorney in this matter.


_____          _____
Chadwick J. Lusk                          Date Signed
Defendant


_____          _____
Thomas W. Smith, Esquire                  Date Signed
Counsel for Defendant

UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

UNITED STATES OF AMERICA

v.                                    CRIMINAL NO. _____
                                      18 U.S.C. § 1341
                                      18 U.S.C. § 1346
CHADWICK J. LUSK                      18 U.S.C. § 2


I N F O R M A T I O N

The United States Attorney Charges:

COUNT ONE
(Honest Services Mail Fraud)

At all relative times:

1.    Defendant CHADWICK J. LUSK was the purchasing agent at
the Mountain Laurel Mining Complex, which is owned by Mingo
Logan Coal Company, a wholly owned subsidiary of Arch Coal,
Inc.("Arch Coal").

2.    CM Supply, Co. ("CM Supply"), owned and operated by
Gary Roeher, named herein as an unindicted co-schemer, served as
a broker for coal companies and coal mining related businesses
by obtaining a variety of electrical and other related parts
used in the mining industry from various manufacturers. Among
other products, CM Supply sold crib blocks to the Mountain
Laurel Mining Complex.  Crib blocks provide roof support in an
underground mine.

PLEA AGREEMENT EXHIBIT A

## The Scheme

3.     From in or about September 2009 through and until at least March 2014, in or near Sharples, Logan County, West Virginia, within the Southern District of West Virginia and elsewhere, defendant CHADWICK J. LUSK together with Gary L. Roeher, named herein as an unindicted aider and abettor, and with others known and unknown to the United States Attorney, devised and intended to devise a scheme and artifice to defraud and deprive Arch Coal of its right to the honest and faithful services of defendant CHADWICK J. LUSK and to obtain money and property by means of intentional false and fraudulent pretenses, representations and promises through the receipt of illegal cash kickbacks and the concealment of material information.

## Purpose of the Scheme

4.     The purpose of the scheme was for defendant CHADWICK J. LUSK to enrich himself by soliciting and receiving a portion of the profit for all crib blocks sold by CM Supply, in exchange for defendant CHADWICK J. LUSK using his official position to direct crib block sales to CM Supply (the "Crib Block Kickback Scheme").

## Manner and Means of the Scheme

5.     The Crib Block Kickback Scheme was carried out in the following manner and means, among others:

a. Defendant CHADWICK J. LUSK would and did receive kickback payments from Gary L. Roeher representing a portion of the profit earned by CM Supply on crib blocks sold to the Mountain Laurel Mining Complex.

b. Gary L. Roeher would and did agree to pay defendant CHADWICK J. LUSK the kickback.

c. Defendant CHADWICK J. LUSK would and did use his official position as a purchasing agent for Arch Coal at the Mountain Laurel Mining Complex to order crib blocks from CM Supply.

d. Gary L. Roeher would and did deliver crib blocks to the Mountain Laurel Mining Complex.

e. Defendant CHADWICK J. LUSK would and did accept cash kickbacks from Gary L. Roeher, which further concealed the scheme.

f. Gary L. Roeher would and did pay defendant CHADWICK J. LUSK cash at locations typically off of the Mountain Laurel Mining Complex to avoid detection.

g. Defendant CHADWICK J. LUSK would and did conceal and cover up his participation in the Crib Block Kickback Scheme from Arch Coal and its representatives.

PLEA AGREEMENT EXHIBIT A

## Mailing in Furtherance of the Scheme

6.    On or about November 15, 2011, in or near Holden, Logan County, West Virginia, within the Southern District of West Virginia and elsewhere, defendant CHADWICK J. LUSK, together with Gary Roeher and others known and unknown to the United States Attorney, aided and abetted by each other and others, for the purpose of executing the scheme, and attempting to do so, did knowingly cause to be delivered by mail, according to the direction thereon, an invoice for crib blocks from CM Supply addressed to the Arch Coal Mountain Laurel Complex in Sharples, Logan County, West Virginia, which contained an invoice that requested reimbursement for 1,800 crib blocks at a cost of $6,030.00.

In violation of Title 18, United States Code, Sections 1341, 1346, and 2.

UNITED STATES OF AMERICA

R. BOOTH GOODWIN II
United States Attorney

By:    _____
MEREDITH GEORGE THOMAS
Assistant United States Attorney

By:    _____
THOMAS C. RYAN
Assistant United States Attorney

PLEA AGREEMENT EXHIBIT A

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF WEST VIRGINIA
### CHARLESTON


UNITED STATES OF AMERICA


v.                                    CRIMINAL NO. _____


CHADWICK J. LUSK


## STIPULATION OF FACTS

The United States and Chadwick J. Lusk stipulate and agree that the facts comprising the offense of conviction in the Information in the Southern District of West Virginia, and the relevant conduct for that offense include the following:

Since approximately late 2006 to March 2014, Mr. Lusk was employed at the Mountain Laurel Mining Complex, which is owned by Mingo Logan Coal Company, a wholly owned subsidiary of Arch Coal, Inc. Since sometime around 2009, Mr. Lusk worked as a purchasing manager. Part of his duties required Mr. Lusk to order parts and products needed in the Mountain Laurel operations.

CM Supply, Co. was a parts vendor for Mountain Laurel, which was owned and operated by Gary Roeher. Among other products, Mr. Roeher sold crib blocks to Mountain Laurel. Crib blocks provide roof support in an underground mine.

Beginning sometime around September 2009, Mr. Roeher began paying Mr. Lusk a portion of the profit that CM Supply received on the sale of crib blocks to Mountain Laurel (the "Crib Block Kickback Scheme").

Going forward, Mr. Lusk would issue a purchase order for crib blocks to CM Supply, as needed in the coal mining operations of Mountain Laurel. CM Supply would deliver the crib blocks and mail an invoice to Arch Coal, generally at the end of the month. Arch Coal typically paid CM Supply by check within ten days.

_____
Defendant's
Initials

After receipt of payment, Mr. Roeher would calculate the amount of money owed as part of the Crib Block Kickback Scheme. As a general practice, Mr. Roeher usually paid Mr. Lusk seven-and-one-half percent (7.5%) of the crib block sales price.

As an example, on or about November 15, 2011, Mr. Roeher mailed a CM Supply invoice from near his home in Holden, Logan County, to Mountain Laurel for payment on a load of 1,800 crib blocks, knowing that a portion of the profits was going to be returned to Mr. Lusk for directing the sale to him.

Between September 2009 until at least March 2014, Mr. Roeher estimates that he paid Mr. Lusk approximately $230,000 in cash kickbacks as part of the Crib Block Kickback Scheme.

This Stipulation of Facts does not contain each and every fact known to Mr. Lusk and to the United States concerning his involvement and the involvement of others in the charges set forth in the Information, and is set forth for the limited purpose of establishing a factual basis for the defendant's guilty plea.

Stipulated and agreed to:

_____     5/19/14
CHADWICK J. LUSK                     _____
Defendant                            Date

_____     5/19/14
THOMAS W. SMITH                      _____
Counsel for Defendant                Date

_____     5.30.2014
MEREDITH GEORGE THOMAS               _____
Assistant United States Attorney     Date

_____     5.30.14
THOMAS C. RYAN                       _____
Assistant United States Attorney     Date


                                     _____
                                     Defendant's
                                     Initials

**PLEA AGREEMENT EXHIBIT B**

Court Name: US District Court/SDWV
Division: 2
Receipt Number: CHAR007895
Cashier ID: Ident
Transaction Date: 07/21/2014
Payer Name: CHADWICK LUSK

CRIMINAL DEBT
   For: CHADWICK LUSK
   Case/Party: D-WVS-2-14-CR-008116-001
   Amount:          $100.00

CASH
   Amt Tendered:    $100.00

Total Due:          $100.00
Total Tendered:     $100.00
Change Amt:         $0.00

Only when bank clears the check,
money order, or verifies credit of
funds is the fee or debt officially
paid or discharged.  A 53 fee will
be charged for a returned check.