IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

```
_____x
                           :
UNITED STATES OF AMERICA,   :   CRIMINAL ACTION NO.
                           :
              Plaintiff,    :   2:14-cr-00116-01
                           :
         -vs-               :
                           :
                           :
CHADWICK J. LUSK,           :
                           :
              Defendant.    :
_____x
```

**TRANSCRIPT OF PLEA HEARING**
**BEFORE THE HONORABLE THOMAS E. JOHNSTON,**
**UNITED STATES DISTRICT JUDGE**
**MONDAY, JULY 21, 2014**

**APPEARANCES:**

**FOR THE PLAINTIFF:**            AUSA MEREDITH GEORGE THOMAS
                                  Assistant United States Attorney
                                  U.S. Attorney's Office
                                  P.O. Box 1713
                                  Charleston, WV  25326-1713


**FOR THE DEFENDANT:**            THOMAS W. SMITH, ESQ.
                                  405 Capitol Street
                                  Suite 701
                                  Charleston, WV 25301


   Proceedings recorded by mechanical stenography, transcript
produced by computer.
_____

CATHERINE L. SCHUTTE-STANT, RPR, RMR
Federal Official Court Reporter
300 Virginia Street East, Room 6009
Charleston, WV 25301
(304) 347-3151

 1            P-R-O-C-E-E-D-I-N-G-S              10:30 a.m.

 2            THE CLERK:  All rise.

 3            THE COURTROOM DEPUTY CLERK:  The matter before the

 4    Court is the *United States versus Chadwick Lusk.*  Criminal

 5    Action Number 2:14-cr-00116, scheduled for a plea hearing.

 6            THE COURT:  Good morning.  Will counsel please

 7    note their appearances?

 8            MS. THOMAS:  Meredith George Thomas on behalf of

 9    the United States.

10            MR. SMITH:  Thomas Smith on behalf of Mr. Lusk,

11    who is present, Your Honor.

12            THE COURT:  Good morning.  Mr. Lusk, will you

13    please stand, and I'll ask the deputy clerk to administer an

14    oath to you at this time.

15        **CHADWICK J. LUSK, THE DEFENDANT, WAS SWORN**

16            THE COURT:  You may be seated.

17                         **EXAMINATION**

18    **BY THE COURT:**

19    **Q.**   Mr. Lusk, do you understand that you're now under oath

20    and you must tell the truth; and if you testify falsely, you

21    may face prosecution for perjury or for making a false

22    statement?

23    **A.**   Yes, sir.

24    **Q.**   Throughout the course of this hearing, I'm going to be

25    asking you a number of questions, and I want to make sure

1   that you and I are communicating clearly, so that if at any

2   time you don't understand the question that I ask or

3   anything else that occurs in this hearing, I want you to

4   feel free to speak up and seek clarification.

5        Also, if at any time you need to confer with your

6   attorney, I'll be pleased to pause the proceedings to allow

7   you to do so.  Do you understand all that?

8   **A.**   Yes, sir.

9   **Q.**   All right.  Let me begin by asking you, how old are

10  you?

11  **A.**   32.

12  **Q.**   And can you briefly describe your educational

13  background?

14  **A.**   I have an accounting degree from Marshall University,

15  with a minor in economics, and a master's from the

16  University of Charleston.

17  **Q.**   And just for the record, can you read and write and

18  understand the English language?

19  **A.**   Yes, sir.

20  **Q.**   Can you briefly describe your work experience?

21  **A.**   I have -- I did an internship in college, accounting

22  internship.  Out of college, I worked as accounts payable

23  and payroll clerk for Arch Coal.  From there, I was an

24  accounting technician, and then a purchasing manager, and a

25  purchasing warehouse manager.

1   **Q.**   Have you taken any medicine or drugs or have you

2   consumed any alcoholic beverages in the last 24 hours?

3   **A.**   No, sir.

4   **Q.**   Including prescription drugs?

5   **A.**   Blood pressure pills.

6   **Q.**   Just that?

7   **A.**   Yes, sir.

8   **Q.**   And you took that this morning?

9   **A.**   No, sir.

10  **Q.**   Last night?

11  **A.**   Last night.

12  **Q.**   All right.  And what was the name of that drug?

13  **A.**   Exforge.

14  **Q.**   And to the best of your knowledge as you sit here

15  today, are you suffering from any side-effects from that

16  medication that would in any way affect your ability to

17  fully participate in this hearing today?

18  **A.**   No, sir.

19  **Q.**   Have you ever been treated for any mental illness or

20  addiction to drugs of any kind?

21  **A.**   No, sir.

22  **Q.**   Do you know where you are and why you're here today?

23  **A.**   Yes, sir.

24  **Q.**   Do you have any hearing impairment or other disability

25  which would prevent you from fully participating in this

1    hearing today?

2    **A.**   No, sir.

3           THE COURT:  Mr. Smith, do you have any reason to

4    question the competency of your client?

5           MR. SMITH:  I do not, Your Honor.

6           THE COURT:  All right.  I believe the original

7    plea agreement has been provided to me.

8        Ms. Thomas, are there any changes in the plea

9    agreement?

10          MS. THOMAS:  No, Your Honor.

11          THE COURT:  All right.  Very good.

12   BY THE COURT:

13   **Q.**   Mr. Lusk, is that your signature that appears on the

14   eighth and final page of the plea agreement?

15   **A.**   Yes, sir.

16   **Q.**   And are those your initials that appear on those pages

17   of the plea agreement?

18   **A.**   Yes, sir.

19   **Q.**   And have you read and reviewed with your attorney each

20   of the 16 paragraphs of the plea agreement and the exhibit

21   attached to it?

22   **A.**   Yes, sir.

23   **Q.**   Or attached exhibits, I should say.  You've reviewed

24   the exhibits?

25   **A.**   Yes, sir.

1    **Q.**   All right.  Do you wish to have the various terms of

2    the plea agreement orally stated on the record, or do you

3    believe that that's unnecessary?

4    **A.**   That's unnecessary, sir.

5    **Q.**   And do you understand and agree with all of the terms

6    and provisions contained in the plea agreement?

7    **A.**   Yes, sir.

8          THE COURT:  Mr. Smith, have you reviewed each of

9    the 16 paragraphs of the plea agreement and its two exhibits

10   with your client?

11         MR. SMITH:  Yes, I have, Your Honor.

12         THE COURT:  And, Mr. Smith, and, Ms. Thomas, is

13   there any reason why either of you believe that the various

14   terms of the plea agreement should be orally stated on the

15   record?

16         MS. THOMAS:  No, Your Honor.

17         MR. SMITH:  No, Your Honor.

18   BY THE COURT:

19   **Q.**   All right, very well.

20         Mr. Lusk, nonetheless, I want to talk with you

21   regarding certain provisions of the plea agreement,

22   beginning with Section 5, which starts on page 2 and runs

23   over onto page 3; it's entitled:  "Restitution," and it

24   recites that you agree that you owe restitution to Arch Coal

25   in the amount of $230,000 plus interest.

1        Do you understand that?

2    **A.**    Yes, sir.

3    **Q.**    And specifically I want to refer you to Subsection

4    5(e).  That's an appeal waiver.  And do you understand that

5    a waiver is a legal term that means you're giving something

6    up?

7    **A.**    Yes, sir.

8    **Q.**    All right.  So in Section 5(e), you're waiving your

9    right to appeal any order of restitution entered by this

10   Court, unless the amount of the restitution ordered is

11   greater than that set forth in this agreement.  Do you

12   understand that?

13   **A.**    Yes, sir.

14   **Q.**    All right.  Let me next refer you to Section 10 of the

15   plea agreement, which begins on page 4 and runs over onto

16   page 5, and it is entitled, "Stipulation of Facts and Waiver

17   of Federal Rule of Evidence 410."

18       Now, this section relates to a couple different

19   matters; the first of which is the Stipulation of Facts

20   which is attached to the plea agreement as Exhibit B.  And I

21   want to turn your attention to that document now.  That's a

22   two-page document.  And on the second page, is that your

23   signature which appears there?

24   **A.**    Yes, sir.

25   **Q.**    And have you read the Stipulation of Facts?

1    **A.**    Yes, sir.

2    **Q.**    And do you agree that all of the facts contained in the

3    Stipulation of Facts are true?

4    **A.**    Yes, Your Honor.

5    **Q.**    You agree that everything in the stipulation is true?

6    **A.**    The only stipulation that I wasn't completely with --

7    but, I mean, I consent to everything in it, yes.

8              MR. SMITH:  Your Honor, if I may?

9              THE COURT:  You may.

10             MR. SMITH:  He is referring to, on page 2, the

11   third unnumbered paragraph as to the overall amount, and his

12   hesitation -- and we've discussed this with the Government

13   -- was that amount does not seem correct to us, but we're

14   not contesting it.  Unequivocally not contesting it.

15             THE COURT:  And that's an estimate of the total

16   kickbacks, an estimate made by Mr. Roeher?

17             MR. SMITH:  Yes, Your Honor.

18             THE COURT:  All right.

19   BY THE COURT:

20   **Q.**    Well, with that clarification then -- so, other than

21   not being so sure about that number, you agree that

22   everything else in the stipulation is true?

23   **A.**    Yes, sir.

24   **Q.**    All right.  A little bit about what will be happening

25   from here on out.  The probation officer will be preparing a

1    presence report.  That report will contain detailed

2    recommended factual findings regarding this offense and your

3    background, among other things.  Ultimately, at sentencing,

4    I will make factual findings based at least in part on the

5    recommendations contained in the presentence report.

6        Now, you and the Government have reached an agreement

7    regarding certain facts contained in this Stipulation, but I

8    want you to understand that in this process neither the

9    probation officer nor this Court are bound by that

10   Stipulation of Facts.  Do you understand that?

11   **A.**   Yes, sir.

12   **Q.**   Do you further understand that if I make findings of

13   fact at sentencing that are different from or inconsistent

14   with the facts contained in this stipulation, you will still

15   be bound by your guilty plea and would have no right to

16   withdraw it?  Do you understand that?

17   **A.**   Yes, sir.

18   **Q.**   All right.  The other matter addressed in Section 10 is

19   a waiver of Federal Rule of Evidence 410.  Now, Rule 410

20   generally provides that information or documents regarding

21   plea negotiation and this Stipulation of Facts which fall

22   into that category is generally not admissible at trial.  In

23   other words, the Government can't use that sort of thing

24   against you at trial under normal circumstances.  However,

25   under this waiver, if you withdraw from the plea agreement,

1    or it's no longer any good as a result of your violation of

2    one or more of its terms and there's a subsequent trial,

3    then the Government would be allowed under this waiver to

4    present the Stipulation of Facts in its case-in-chief or for

5    other purposes at that trial.  Do you understand that

6    waiver?

7    **A.**   Yes, sir.

8    **Q.**   All right.  Next I want to refer you to Section 11 of

9    the plea agreement, which is entitled "Agreement on

10   Sentencing Guidelines."  It's on page 5.

11       Now, before we get into this, I want to ask you:  Has

12   your attorney talked with you about the federal sentencing

13   guidelines and how they generally work?

14   **A.**   Yes, sir.

15   **Q.**   And has he shown you that chart in the back of the

16   book?

17   **A.**   Yes, sir.

18   **Q.**   All right.  Well, working from that chart, I want to

19   have a similar discussion with you.  If you'll recall from

20   the chart, on the left side of the page, there's a series of

21   numbers that run from low to high as you go down the page.

22   Those are the offense levels.  The offense level is

23   calculated by starting at the base offense level or a

24   starting point, and that can be adjusted upward or downward,

25   depending upon the facts and circumstances of the case, to

1    arrive at an adjusted offense level.  Then consideration is

2    generally given to a reduction for acceptance of

3    responsibility.

4        Has your attorney talked with you about that?

5    **A.**   Yes, sir.

6    **Q.**   All right.  Then you generally arrive at a total

7    offense level.  Then you go up to the top of the chart and

8    there are six criminal history categories, and you would

9    fall into one of them, depending on the number of points, if

10   any, assigned to any prior convictions that you may have.

11       Then you combine the criminal history category and the

12   total offense level to arrive at a point in the chart that

13   gives a range of months of imprisonment.  And in certain

14   parts of the chart there are certain alternatives available

15   to imprisonment.

16       Do you understand all this so far?

17   **A.**   Yes, sir.

18   **Q.**   Once we arrive at a guideline range, I can sentence you

19   within that range, or I'm permitted to sentence you outside

20   of that range, under certain circumstances, above or below

21   it.  If I do that, based on factors identified in the

22   guidelines, that's generally known as a departure.  And if I

23   sentence you outside of the guideline range, again, above it

24   or below it, based on factors outside the guidelines, it's

25   generally known as a variance.

1          Has your attorney talked with you about all these

2     things about the guidelines?

3     **A.**    Yes, sir.

4     **Q.**    And do you believe that you understand them all?

5     **A.**    Yes, sir.

6     **Q.**    All right.  Well, with all that in mind, then, Section

7     11 contains an agreement that you've reached with the

8     Government regarding one or more provisions of the federal

9     sentencing guidelines.  Now, this is similar to the

10    Stipulation of Facts in that the probation officer in the

11    presentence report will include a recommended guideline

12    calculation, and ultimately at sentencing I will make

13    guideline findings based at least in part on the probation

14    officer's recommendations.

15         Now, so, once again, even though you've reached an

16    agreement with the Government regarding the guidelines here

17    in Section 11, I want you to understand that neither the

18    probation officer, nor this Court are bound by an agreement

19    on the guidelines.  Do you understand that?

20    **A.**    Yes, sir.

21    **Q.**    And do you further understand that if I make guideline

22    findings at sentencing that are different from or

23    inconsistent with this agreement on the guidelines, you will

24    still be bound by your guilty plea and would have no right

25    to withdraw it?  Do you understand that?

1    **A.**    Yes, sir.

2    **Q.**    All right.  Next I want to refer you to Section 12 of

3    the plea agreement, which begins on page 5 and runs over

4    onto page 6, and is entitled "Waiver of Appeal and

5    Collateral Attack."

6         Now, this section relates to a couple different

7    procedures that I want to go over with you briefly.  An

8    appeal is a procedure by which a party to a case before a

9    district court like this one, and in a criminal case it's

10   often the defendant, goes to the next level up of the court

11   system, the Court of Appeals, and argues that certain errors

12   or mistakes may have taken place in their criminal case

13   before the district court.

14        A collateral attack is similar, but it is a separate

15   civil action that a defendant may file after their criminal

16   case is over, and it's sometimes referred to as a habeas

17   corpus petition, in which they may also argue that certain

18   errors or mistakes may have taken place in their criminal

19   case before the district court.

20        Now, do you understand those two procedures, at least

21   as I've briefly described them to you?

22   **A.**    Yes, sir.

23   **Q.**    The other thing I want you to understand before we get

24   into Section 12 is that there are two phases to a criminal

25   case.  The first phase is the part in which guilt or

1   innocence is determined.  Sometimes that occurs at a trial.

2   Much more often it occurs as a result of a guilty plea like

3   what we're doing today.  That first phase begins at the very

4   beginning of the case and it includes all the proceedings up

5   to and including the determination of guilt by a guilty plea

6   or otherwise.

7        The second phase of the case then, assuming guilt is

8   determined, is the penalty phase in which the penalty for

9   the crime is determined, and that usually concludes with a

10  sentencing hearing at the end of the case.

11       Do you understand the two phases of criminal cases as

12  I've described them to you?

13  **A.**   Yes, sir.

14  **Q.**   All right.  With all that in mind then, section -- the

15  first paragraph of Section 12 contains an appeal waiver, and

16  I want to go over that with you now.  Do you understand that

17  you waive the right to appeal your conviction and any

18  sentence of imprisonment, fine, or term of supervised

19  release, or the manner in which the sentence was determined

20  upon any ground whatsoever, with one exception; you may

21  appeal any sentence that is greater than the maximum penalty

22  set forth by statute?  Do you understand that waiver?

23  **A.**   Yes, sir.

24  **Q.**   Anything about it that you don't understand?

25  **A.**   No, sir.

1    **Q.**   All right.  Then in the second paragraph, you also

2    understand that you may not file a later civil proceeding,

3    sometimes referred to as a collateral attack or a habeas

4    corpus petition, challenging your plea, conviction, or

5    sentence?

6    **A.**   Yes, sir.

7    **Q.**   And finally, do you understand that you are in no event

8    waiving your right to claim ineffective assistance of

9    counsel, either upon appeal or by collateral attack?

10   **A.**   Yes, sir.

11   **Q.**   And finally, I want to refer you to Section 13 of the

12   plea agreement, which appears on page 6.  It's entitled

13   "Waiver of FOIA and Privacy Right."  And this waiver means

14   that you can't go back after this case is over and seek

15   documents or other information about the case from the

16   Government, even with a Freedom of Information Act request.

17   Do you understand that waiver?

18   **A.**   Yes, sir.

19            THE COURT:  Mr. Smith, have you thoroughly

20   reviewed the plea agreement with your client?

21            MR. SMITH:  Yes, Your Honor.

22            THE COURT:  And do you believe that he fully

23   understands the various terms and provisions of the plea

24   agreement, including the waivers and other matters that I've

25   gone over with him today?

1        MR. SMITH:  Yes, Your Honor, I do.

2    BY THE COURT:

3    **Q.**   And, Mr. Lusk, have you reviewed the plea agreement in

4    detail with your attorney?

5    **A.**   Yes, sir.

6    **Q.**   And do you believe that you've had adequate time to

7    discuss your case fully with your attorney?

8    **A.**   Yes, sir.

9    **Q.**   Has your attorney answered any questions that you've

10   had about your case?

11   **A.**   Yes, sir.

12        THE COURT:  Mr. Smith, during your representation

13   of the defendant, has he been cooperative?

14        MR. SMITH:  Absolutely, Your Honor.

15   BY THE COURT:

16   **Q.**   And, Mr. Lusk, has anything further been agreed to,

17   either orally or in writing, that is not contained in the

18   plea agreement?

19   **A.**   No, sir.

20        THE COURT:  All right.  I'll order that the plea

21   agreement be filed.  And I will find that the defendant

22   understands and agrees to the terms contained in the plea

23   agreement.  I will defer accepting or rejecting the plea

24   agreement until sentencing, after the presentence report has

25   been received and considered.

1    BY THE COURT:

2    **Q.**   Now, Mr. Lusk, have you received and read and reviewed

3    with your attorney the Information or charging document that

4    has been proposed in this case?

5    **A.**   Yes, sir.

6    **Q.**   And do you understand the charge contained in the

7    Information?

8    **A.**   Yes, sir.

9    **Q.**   Would you like me to read the Information to you, or

10   will you waive the reading of the Information?

11   **A.**   I'll waive the reading, sir.

12          THE COURT:  All right.  As I understand it, you'll

13   be pleading guilty to a single-count Information, which

14   charges you with honest services mail fraud, in violation of

15   18, U.S.C., Section 1341 and 1346.

16       Now, I note that Section 2 is charged, but, it appears,

17   based on what I understand the facts to be in this case,

18   that Mr. Lusk is charged as a principal; is that correct?

19          MS. THOMAS:  Yes, Your Honor.

20          MR. SMITH:  Yes, Your Honor.

21          THE COURT:  All right.  So I'm going to go ahead

22   and dispense with the Section 2 elements and the definitions

23   if there's no objection.

24   BY THE COURT:

25   **Q.**   All right.  But, nonetheless, I want to go over these

1    statutes with you and the charge in just a little bit more

2    detail.

3         18, U.S.C., Section 1341 provides, in pertinent part

4    that:  Whoever, having devised or intending to devise any

5    scheme or artifice to defraud, or for obtaining money or

6    property by means of false or fraudulent pretenses,

7    representations, or promises, for the purposes of executing

8    such scheme or artifice or attempting so to do, knowingly

9    causes to be delivered by mail, according to the direction

10   thereon, any such matter or thing, shall be guilty of a

11   crime against the United States.

12        Let me just take a look at one thing.

13        18, U.S.C., Section 1346 defines the phrase -- or

14   adds -- or, according to that statute, the phrase, any

15   scheme or artifice to defraud includes a scheme or artifice

16   to deprive another of the intangible right of honest

17   services.

18        Now, in order to prove this charge, the Government

19   would have to prove the following elements in this crime,

20   each beyond a reasonable doubt, and they are:  That you

21   knowingly devised or knowingly participated in a scheme or

22   artifice to defraud; that is, you knowingly devised or

23   knowingly participated in a scheme to deprive Arch Coal of

24   its intangible right of honest services of its employee by

25   means of materially false or fraudulent pretenses,

1    representations, omissions or promises, and that you did so

2    with the intent to defraud; and in advancing or furthering

3    your carrying out this scheme to defraud by means of

4    materially false or fraudulent pretenses, representations,

5    omissions or promises, you used the mail or caused the mail

6    to be used.

7         Now, I want to share with you some definitions that

8    apply to what I've just told you.

9         The phrase "any scheme or artifice to defraud" means

10   any deliberate plan of action or course of conduct by which

11   someone intends to deceive or to cheat another or by which

12   someone intends to deprive another of something of value.

13        In the context of the facts of this case, the phrase

14   "scheme or artifice to deprive another of the intangible

15   right of honest services" means that you as an employee of

16   Arch Coal, Inc., owed your employer a fiduciary duty of

17   loyalty; that you intended to breach that duty by failing to

18   disclose material matters; and that you foresaw or

19   reasonably should have foreseen that your employer might

20   suffer an economic harm as a result of the breach.

21        The phrase "false or fraudulent pretenses or

22   representations, omissions or promises" means a statement,

23   an assertion or omission which concerns a material or

24   important fact or a material or important aspect of the

25   matter in question.

1        A false representation or promise is one that was

2    either known to be untrue at the time that it was made or

3    used, or it was made or used with reckless indifference as

4    to whether it was, in fact, true or false, or made or used

5    with the intent to defraud.

6        An intent to defraud means to act knowingly and with

7    the intention or the purpose to deceive or cheat.  An intent

8    to defraud is accompanied ordinarily by a desire or a

9    purpose to bring about some gain or benefit to oneself, or

10   some other person, or by a desire or purpose to cause some

11   loss to some person.

12       The use of the -- the phrase "use of the mails" means

13   that the mails were, in fact, used in some manner to further

14   or to advance or to carry out the scheme to defraud or

15   deprive Arch Coal of its intangible right of its employees

16   honest services.

17       An act is done knowingly if it's done voluntarily and

18   intentionally, and not by mistake, or accident, or other

19   innocent reason.

20       Any objection to the elements as I've described them?

21           MS. THOMAS:  No, Your Honor.  I would just ask

22   that the scheme to deprive Arch Coal of honest services has

23   to be attributed to bribery or kickbacks.  I would add that.

24           THE COURT:  All right.  Under *Skilling*?

25           MS. THOMAS:  Yes, Your Honor.

1          THE COURT:  Yes.

2          MR. SMITH:  I would agree with that, Your Honor.

3          THE COURT:  You do?

4          MR. SMITH:  Yes.

5          THE COURT:  All right, very well.

6     BY THE COURT:

7     **Q.**   Next, Mr. Lusk, I want to go over with you the maximum

8     and the minimum sentences you may face as a result of your

9     plea, and, that is, a maximum term of imprisonment of 20

10    years; a maximum fine of $250,000, or twice the gross

11    pecuniary gain or loss resulting from your conduct,

12    whichever is greater; and a maximum term of supervised

13    release of three years.  A mandatory special assessment of

14    $100 will be required, and restitution could be ordered if

15    it were found to be applicable.

16         Next I want to return to our discussion to the federal

17    sentencing guidelines.  They are advisory, meaning they're

18    not mandatory or don't have to be followed, but they'll

19    nevertheless play an important role in your case from here

20    on out.

21         This Court will consider the factors set forth in

22    18, U.S.C., Section 3553(a), including the advisory

23    guidelines, in determining the appropriate sentence in your

24    case.  And I'll want to ask you some questions that will

25    help me to understand your understanding of the advisory

1    guidelines.

2        Have you discussed with your attorney the various

3    factors which apply in determining what the sentence in your

4    case may be under the advisory guidelines?

5    **A.**   Yes, sir.

6    **Q.**   And do you understand that under the single-count

7    Information, you cannot in any event receive a greater

8    sentence than the statutory maximum that I explained to you

9    a moment ago?

10   **A.**   Yes, sir.

11   **Q.**   Do you understand that the Court will not determine the

12   sentence for your case until a later date when a presentence

13   report has been completed and both you and the Government

14   have had an opportunity to challenge the facts and analysis

15   reported by the probation officer?

16   **A.**   Yes, sir.

17   **Q.**   Do you also understand that under a concept known as

18   relevant conduct, this Court, in determining the total

19   offense level for sentencing purposes under the guidelines,

20   may take into account any conduct, circumstances, or

21   injuries relevant to the crime of which you may be

22   convicted?

23   **A.**   Yes, sir.

24   **Q.**   Do you understand that after the Court has determined

25   what advisory guidelines apply to your case, the Court has

1    the authority to vary or depart from the advisory guidelines

2    and impose a sentence that is more severe or less severe

3    than the sentence called for by the guidelines?

4    **A.**   Yes, sir.

5    **Q.**   Do you understand, in determining your sentence, the

6    Court is obligated to calculate the applicable sentencing

7    guideline range and to consider that range, possible

8    departures under the guidelines, and other sentencing

9    factors under 18, U.S.C., Section 3553(a)?

10   **A.**   Yes, sir.

11   **Q.**   Do you understand that parole has been abolished, and

12   if you're sentenced to imprisonment, you will not be placed

13   on parole?

14   **A.**   Yes, sir.

15   **Q.**   Do you understand that if the Court accepts your plea

16   of guilty and the sentence ultimately imposed upon you is

17   more severe than you had hoped for or expected, you will

18   still be bound by your guilty plea and would have no right

19   to withdraw it?

20   **A.**   Yes, sir.

21   **Q.**   Do you understand that if you plead guilty to this

22   Information, which charges you with a felony, you may lose

23   important civil rights, such as the right to vote, the right

24   to serve on a jury, the right to hold public office, and the

25   right to own or possess a firearm?

1    **A.**   Yes, sir.

2    **Q.**   Mr. Lusk, you have the right to have this matter

3    presented to a federal grand jury, and I want to explain

4    that process to you at this time.  A grand jury is composed

5    of at least 16 and not more than 23 persons.  And at least

6    12 grand jurors must find that there's probable cause to

7    believe that you committed the crime of which you are

8    charged before you may be indicted.

9        Now, do you see any benefit to you of having this case

10   presented to a federal grand jury?

11   **A.**   No, sir.

12   **Q.**   Do you see any prejudice or disadvantage to you of not

13   having the case presented to a grand jury?

14   **A.**   No, sir.

15   **Q.**   All right.  Your counsel has been provided with a

16   waiver of indictment form, and I want to go over that with

17   you now.  It has the, what we call the style of the case,

18   the *United States of America versus Chadwick J. Lusk*, and

19   the Criminal Action Number.

20       And it's entitled:  "Waiver of Indictment."

21       And it states as follows:  "I, Chadwick J. Lusk, am

22   accused of violating 18, U.S.C., Sections 1341, 1346, and 2.

23   I have been advised of the nature of the charge of the

24   proposed Information and of my rights.  I hereby waive in

25   open court prosecution by indictment and consent that the

1    proceedings may be by Information rather than by

2    indictment."

3         And there's a space for you to sign and date, a space

4    for your counsel to sign, and a space for me to sign.

5         Now, do you understand what I've just read to you?

6    **A.**   Yes, sir.

7    **Q.**   Anything about the waiver of indictment procedure that

8    you don't understand or that you have questions about?

9    **A.**   No, sir.

10   **Q.**   All right.  If you're prepared to do so, then, I'll ask

11   that you execute the waiver of indictment form by signing it

12   and dating it, and I'll ask your counsel to sign it and

13   tender it to the Court.

14             MR. SMITH:  May I approach, Your Honor?

15             THE COURT:  You may.

16             MR. SMITH:  I'm tendering the waiver to your

17   clerk, and also while here I have the special assessment

18   receipt.

19             THE COURT:  Very well.  We'll make the receipt a

20   part of the record.  And I will also note that the defendant

21   has signed and dated the waiver of indictment form that has

22   been endorsed by his counsel.  I am now signing it.  And

23   I'll order that it be made a part of the record for this

24   proceeding.

25

1    BY THE COURT:

2    **Q.**   Mr. Lusk, I now want to talk with you regarding your

3    trial and constitutional rights.  You have the right to

4    plead not guilty and maintain a not guilty plea throughout

5    these proceedings, including at trial.

6         You have the right to be represented by counsel.

7         You have the right to a speedy and public trial by a

8    jury composed of citizens of this district.

9         You have the right to confront and have your attorney

10   cross-examine witnesses and have your attorney move to

11   suppress any evidence he believes was illegally or

12   unconstitutionally obtained.

13        You have the right not to testify or otherwise

14   incriminate yourself, and your exercise of this right cannot

15   be held against you.

16        Do you understand these rights so far?

17   **A.**   Yes, sir.

18   **Q.**   You have the right to have the Government come in here

19   and prove its case beyond a reasonable doubt.

20        The jury's verdict would have to be unanimous.

21        You have the right to present evidence on your own

22   behalf, and you have the right to testify on your own behalf

23   at trial.

24        And you have the right to subpoena witnesses to testify

25   for you.

1       Do you understand all of these rights?

2   **A.**   Yes, sir.

3   **Q.**   Any of them that you don't understand or have questions

4   about?

5   **A.**   No, sir.

6   **Q.**   Do you understand that other than your right to

7   counsel, that you'll be giving up all these rights by

8   entering a plea of guilty?

9   **A.**   Yes, sir.

10  **Q.**   Do you understand that once you've entered a plea of

11  guilty, there's not going to be any trial, no jury verdict,

12  and no findings of innocence or guilt based on disputed

13  evidence presented to me or to a jury?

14  **A.**   Yes, sir.

15  **Q.**   Do you believe that you fully understand the

16  consequences of entering a plea of guilty?

17  **A.**   Yes, sir.

18          THE COURT:  Mr. Smith, having reviewed this case

19  and the plea agreement in detail with your client, do you

20  believe that he fully understands his rights and fully

21  understands the consequences of entering a plea of guilty?

22          MR. SMITH:  I do, Your Honor.

23          THE COURT:  All right.  Is there any objection to

24  the Court utilizing the Stipulation of Facts in its

25  consideration of the factual basis?

1          MS. THOMAS:  No, Your Honor.

2          MR. SMITH:  No, Your Honor.

3          THE COURT:  All right.  I looked at this and Ms.

4     Thomas and I discussed this a little bit last week.  I think

5     going forward -- I don't need to deal with this today.  I'm

6     prepared to move forward, but going forward, I think that we

7     need -- you're going to need to address the risk of economic

8     harm caused by this under the *Vineyard* case.

9          So we don't need to address that today, but that does

10    need to be addressed before I address the factual basis at

11    sentencing.

12          MS. THOMAS:  I believe you asked for a September

13    15th deadline in the Mr. David Herndon matter.  Would you

14    like the same for this matter?

15          THE COURT:  If you're all right with that, I'm all

16    right with that.  I don't want to put too many deadlines on

17    you personally all at once, so -- and this is a different

18    scheme.

19          MS. THOMAS:  Yes.

20          THE COURT:  So if you're all right with that, I'm

21    all right with that.

22          MS. THOMAS:  I'm fine with that.

23          THE COURT:  All right.  Then we'll -- that's when

24    I will look for that.

25          And, Mr. Smith, you all can do that jointly, you can

1    file something separately; I'll leave that up to you all.

2    You all might be able to find that you're on the same page

3    about that.

4            MR. SMITH:  Thank you, Your Honor.

5            THE COURT:  All right.

6        All right, Mr. Lusk, will you please stand?

7        As to the charge contained in the single-count

8    Information, how do you plead, sir, guilty or not guilty?

9            THE DEFENDANT:  Guilty.

10           THE COURT:  And you may be seated.

11       Your counsel has been provided with a written plea of

12   guilty form.  I would ask that you go over that with him as

13   necessary, sign and date it, and then I'll ask him to sign

14   it and tender it to the Court.

15           MR. SMITH:  Your Honor, I have been over it with

16   him and both he and I have executed it and dated it.

17           THE COURT:  All right.

18           MR. SMITH:  May I approach?

19           THE COURT:  You may.  The defendant has signed and

20   dated the written plea of guilty form that has been

21   witnessed by his counsel, and I'll order that it be made a

22   part of the record for this proceeding.

23   BY THE COURT:

24   **Q.**   Mr. Lusk, is this plea the result of any threat or

25   coercion or harassment of you by anyone?

1    **A.**    No, sir.

2    **Q.**    Is it the result of any promise or inducement other

3    than as contained in the plea agreement?

4    **A.**    No, sir.

5    **Q.**    Are you pleading guilty to protect anyone?

6    **A.**    No, sir.

7    **Q.**    Are you acting voluntarily and of your own free will in

8    entering this guilty plea?

9    **A.**    Yes, sir.

10   **Q.**    Has anyone promised or predicted the exact sentence

11   which will be imposed in your case?

12   **A.**    No, sir.

13   **Q.**    Do you understand that no one can know at this time the

14   exact sentence which will be imposed?

15   **A.**    Yes, sir.

16   **Q.**    Has your attorney adequately represented you in this

17   matter?

18   **A.**    Yes, sir.

19   **Q.**    Has your attorney left anything undone which you think

20   should have been done?

21   **A.**    No, sir.

22   **Q.**    Have you or your attorney found any defense to the

23   charge contained in the Information?

24   **A.**    No, sir.

25   **Q.**    Are you, in fact, guilty of the crime charged in the

1    Information; in other words, did you do it?

2    **A.**    Yes, sir.

3          THE COURT:  All right.  I will find that the

4    defendant is competent and capable of entering an informed

5    plea; that the plea is freely and voluntarily made; that the

6    defendant understands the nature of the charge and is aware

7    of the consequences of the plea.

8          I will find that the defendant understands his rights

9    and understands that he's giving up these rights by entering

10   a plea of guilty.  I will find -- I will defer a factual

11   basis finding, but I will accept the plea of guilty to the

12   Information.  And I will defer adjudging the defendant

13   guilty until the time of sentencing.

14         I will ask the probation officer to prepare a

15   presentence investigation report.

16         Mr. Lusk, it's important that you cooperate fully with

17   the probation officer in the preparation of the presentence

18   report.  If you fail to cooperate fully and truthfully with

19   the probation officer, you may be subject to an enhancement

20   of your sentence, or the forfeiture of certain sentence

21   reductions for which you might otherwise be eligible.

22         It's also important that you not commit any additional

23   crimes between now and sentencing, as there may be

24   additional punishments imposed for committing additional

25   crimes.

1          I'm going to set this matter for sentencing on October

2     29, 2014, at 1:30 p.m.  I will put the other presentence

3     dates in my post-plea Order.

4          Ms. Thomas, what's the Government's position with

5     regard to bond?

6          MS. THOMAS:  The United States has no objections

7     to his release on bond.

8          THE COURT:  All right.  I will permit the

9     defendant to be released on a $10,000 unsecured bond today

10     under the standard conditions.  I'm going to go ahead now

11     and sign my part of that paperwork.

12          And, Mr. Smith, you and your client just need to

13     complete the paperwork with my Courtroom Deputy after the

14     hearing concludes.

15          MR. SMITH:  Yes, Your Honor.

16          THE COURT:  And one thing, one thing, if you --

17     Mr. Lusk, if you have firearms, you're going to have to get

18     rid of them; get them into the possession of someone else as

19     a part of the bond conditions.  And I think you need to

20     surrender your passport, if you haven't already done so.

21          THE DEFENDANT:  Okay, yes, sir.

22          THE COURT:  All right.  Anything else we need to

23     take up today?

24          MS. THOMAS:  No, Your Honor.

25          MR. SMITH:  No, Your Honor.

1      THE COURT:  All right.  Thank you.

2      THE CLERK:  All rise.  This Court is in recess.

3    (Proceedings concluded at 11:07 a.m.)

4

5              CERTIFICATE OF OFFICIAL REPORTER

6      I, Catherine L. Schutte-Stant, Federal Official Court

7    Reporter, in and for the United States District Court, for

8    the Southern District of West Virginia, do hereby certify

9    that the foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter.

12

13              Dated this 4th day of September 2014.

14

15

16              /s/ CATHERINE L. SCHUTTE-STANT, RPR,RMR
                _____
17              CATHERINE L. SCHUTTE-STANT, RPR,RMR
                FEDERAL OFFICIAL COURT REPORTER
18

19

20

21

22

23

24

25