IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON

**UNITED STATES OF AMERICA**

v.   CRIMINAL NO. 2:14-00116

**CHADWICK J. LUSK**

## MEMORANDUM OF LAW REGARDING REASONABLY FORESEEABLE ECONOMIC RISK

Comes now the United States of America, by Meredith George Thomas, Assistant United States Attorney for the Southern District of West Virginia, and respectfully submits the following memorandum of law.

**I.  Background**

On July 21, 2014, Chadwick J. Lusk pled guilty to violations of 18 U.S.C. §§ 1341, 1346 and 2 (honest services mail fraud and aiding and abetting).

As reflected in the Stipulation of Facts filed in this case, since 2009, Lusk was the purchasing manager at the Mountain Laurel Mining Complex, owned by a subsidiary of Arch Coal, Inc. Stipulation of Facts at 1. A portion of his duties included ordering parts and products essential to the operation of Mountain Laurel. Id. CM Supply, Co., owned and operated by Gary Roeher, sold crib blocks, which provide roof support in an underground mine, to Mountain Laurel. Id. Beginning sometime in 2009, until at least March 2014, Roeher began paying Lusk a

portion of the profit that CM supply received on the sale of crib blocks in exchange for Lusk directing the sale to him. See id. at 1-2. Generally, Roeher paid Lusk 7.5% of the crib block sales price after Roeher received payment from Arch. Id. at 2. Roeher estimates that he paid Lusk approximately $230,000 between 2009 and March 2014. Id. at 2.

At the guilty plea hearing, Lusk's attorney noted that while Lusk had some issues with the calculated amount of payments, he was not contesting that amount. See Plea transcript at 8. The Court explained to Lusk the elements of 18 U.S.C. §§ 1341 and 1346, and asked the parties to file memoranda regarding the risk of economic harm to Arch Coal in light of the kickback arrangement between Roeher and Lusk.

**II. Legal Standard**

As this Court is well aware, a scheme to defraud a company of its right to the honest services of an employee requires the breach of a fiduciary duty by an employee. Furthermore, the breach must occur through the acceptance or demand of bribes or kickbacks. See United States v. Skilling, 561 U.S. 358, 408-09 (2010) (narrowing honest services fraud to cases of bribery and kickback schemes). The bribery or kickback must be in exchange for official action. Id. at 410.

The Supreme Court in Skilling noted that debates on whether a fiduciary duty exists in bribery and kickback schemes are

rare. Skilling, 561 U.S. at 407 n.41. The United States contends that a breach of fiduciary duty occurs when an employee takes a bribe or a kickback in exchange for official action.

The Fourth Circuit has not specifically addressed the breach of a fiduciary duty by an employee in light of the narrowed § 1346 application post-Skilling. Pre-Skilling, the Fourth Circuit considered the elements of a violation of § 1346, and held that in the private employment context, a violation occurs when "the employee intended to breach a fiduciary duty, and that the employee foresaw or reasonably should have foreseen that his employer might suffer an economic harm as a result of the breach." United States v. Vinyard, 266 F.3d 320, 327 (4th Cir. 2001). The Fourth Circuit further explained that a violation of § 1346 occurred when there was a breach of fiduciary duty and when the defendant "reasonably should have foreseen that the breach would create an identifiable economic risk to the [employer]." Id. (adopting the reasonably foreseeable test, rather than the materiality test). The Fourth Circuit further noted that "[t]he reasonably foreseeable harm test neither requires an actual economic loss nor an intent to economically harm the employer." Id. at 329 (citing United States v. Sun-Diamond Growers, 138 F.3d 961, 974 (C.A.D.C. 1998)). It is reasonably foreseeable that harm would occur when, "at the time of the fraud scheme, the employee could foresee

3

that the scheme potentially might be detrimental to the employer's economic well-being." Id. "Economic risk" includes "risk to future opportunities for savings or profit" and includes "both the long-term and the short-term health of the business." Id. Economic harm need not actually occur, however, as "[w]hether the risk materializes or not is irrelevant; the point is that the employee has no right to endanger the employer's financial health or jeopardize the employer's long-term prospects through self-dealing." Id.

In the case where the defendant is not the employee, the Vinyard Court determined that the element is met if the defendant "willingly aided and participated in the breach of a fiduciary duty" by the employee, and that the defendant "could reasonably foresee that the breach would create an identifiable economic risk" to the employee's company. See id. at 329-30.

### III. Question presented

How did the arrangement between Roeher and Lusk create a reasonably foreseeable economic risk to Arch?

### IV. Short answer

While the United States contends that the breach of fiduciary duty occurred when Lusk accepted Roeher's kickbacks, the United States also contends that the kickback arrangement created reasonably foreseeable economic risks to Arch. For at least three reasons, the scheme involving kickback payments made

4

from Gary Roeher to Purchasing Manager Chad Lusk caused a breach of fiduciary duty that resulted in reasonably foreseeable economic risks to Arch Coal, Lusk's employer. Furthermore, these risks were reasonably foreseeable to Lusk.

First, the arrangement between Roeher and Lusk created a reasonably foreseeable economic risk that Arch would not receive the best price it could have negotiated for crib blocks with CM Supply, Co., as Arch did not know that Roeher essentially was willing to take 7.5% less for crib blocks over the four-and-a-half-year period that Roeher paid kickbacks to Lusk. Second, the arrangement created a reasonably foreseeable economic risk that Arch would not receive a better price for crib blocks from another company. Finally, the agreement created a reasonably foreseeable economic risk that should the crib blocks provided by Roeher be deficient in any way, Lusk would not act in Arch's interest but instead in his own and Roeher's interests, and not report the insufficiency to Arch or seek another supplier.

**V. Discussion**

   **A. Economic Risk of Failing to Bargain for the Best Price**

Courts have considered the economic effects of bribery on employers, including the economic harm that occurs when a business is denied the opportunity to negotiate for a better price from the vendor paying the kickbacks to the business's employee. In United States v. Fagan, 821 F.2d 1002 (5th Cir.

5

1987), the Fifth Circuit considered the effect of kickbacks paid to an employee on a company. See generally id. (applying the materiality test, rather than the reasonably foreseeable test). In Fagan, the defendant-vendor paid a company's employee $100 per day per boat that the company rented from defendant, equating approximately $165,000 over less than three years. Id. at 1005. In Fagan, the Court found that the agreement between the defendant-vendor and the company's employee deprived the company of information regarding how much money defendant actually would have accepted for the boat rentals. The Court explained that the arrangement between defendant and the employee prevented the company from "captur[ing] for itself the large sums that [employee] was secreting because [company] would have known that [defendant-vendor] was willing to lease his boats for less," which "had some economic value." Id. at 1009. As the Fagan court explained, the kickback scheme "was calculated to deprive [company] of this economic benefit."[1] Id. at 1010.

The Seventh Circuit Court of Appeals has also considered the effect of a kickback scheme on a company's inability to

---

[1] While the intent to defraud is not at issue here, the Fagan Court further noted that the intent to defraud was present for both the defendant vendor and the employee recipient of the kickbacks, as "each knew that [defendant-payer] was willing to lease to [company] for the lesser sums and that [company] could have been receiving the benefit of [defendant-vendor's] kickbacks to its employee." Id. at 1011.

6

negotiate for the best possible price. United States v. George, 477 F.2d 508 (7th Cir. 1973). In George, Seventh Circuit noted that the employee's duty was to "negotiate the best price possible" for a company or at least tell the company that the vendor was willing to sell the goods "for substantially less money." Id. at 512-13. While the Seventh Circuit also applied the materiality test, the Court found that "there was a very real and tangible harm to [company] in losing the discount or losing the opportunity to bargain with a most relevant fact before it." Id. at 513. The Court reasoned in George that, although the profits to the vendor were within the normal range for vendors of that company, "nothing would have prevented [company] from bargaining with [vendor] for a lesser profit margin." Id. at 513. Furthermore, the Court pointed out that "if the substantial payments . . . were not designed to compromise [employee's] fiduciary duties to [company], why were they not made directly and openly . . ?" Id. at 514.

Roeher estimates that he paid Lusk approximately $230,000 between 2009 and March 2014. While Lusk may dispute that number, he does not deny that he received kickbacks from Roeher for the crib block purchases. Arch could have negotiated for a better price with CM Supply, Co. or a discount, had Arch been equipped with all the facts that Lusk knew. However, Arch did not know that Lusk obtained the cash from Roeher, and it was

7

reasonably foreseeable to Lusk that keeping the kickback information from Arch kept Arch from negotiating the best possible price with CM Supply, Co.

**B.    Lack of Competition**

The arrangement between Lusk and Roeher created a reasonably foreseeable economic risk that, as purchasing manager, Lusk would not seek better prices on crib blocks from other vendors.  While the United States has no information indicating that any of the Mountain Laurel vendors providing supplies during the relevant time period delivered better prices on crib blocks than CM Supply, Co., the kickbacks ensured that Lusk would not seek other vendors who were not current Mountain Laurel vendors that may have had even lower prices than Roeher's company. Other companies may have been willing to provide the same crib blocks at a better price, yet there was no reason for Lusk to seek better prices due to the kickback arrangement. Thus, the arrangement created a reasonably foreseeable economic risk.

**C.    Risk of Unsatisfactory Services**

A kickback arrangement provides an incentive for an employee to keep relevant information from the employer.  In Sears Roebuck & Co. v. American Plumbing & Supply Co., 19 F.R.D. 334 (E.D. Wis. 1956), a company sued the principal of a supplier that was paying bribes to one of the company's employees.  While

8

a civil case, the Court, in considering whether the defendant intended the payments as gifts or had a fraudulent intent in making the payments, recognized that the "[p]ayment of secret commissions under such circumstances can have one purpose, namely, that of making the agent of the adverse party beholden to the person giving the secret commissions." Id. at 343. Kickback arrangements create an economic risk because they create an incentive –cash kickbacks- for the employee to keep economically-relevant information from his employer, such as a vendor providing substandard services, like faulty crib blocks or late deliveries.

Here, the arrangement created a reasonably foreseeable economic risk that, to the tune of 7.5% of the crib block sales price, Lusk's allegiance would remain with CM Supply, Co., and thus Lusk would not tell Arch if CM Supply, Co. provided shoddy crib blocks or late deliveries that were not up to Arch's standards. Such actions are not alleged here, but the economic risk is inherent in a kickback scheme such as the one at issue.

**VI. Conclusion**

For the foregoing reasons, the United States submits that by accepting kickbacks, Lusk breached his fiduciary duty to Arch, and furthermore, the arrangement between Lusk and Roeher created a reasonably foreseeable economic risk to Arch.

                              Respectfully submitted,

                              R. BOOTH GOODWIN II
                              United States Attorney

By:
                              <u>/s/Meredith George Thomas</u>
                              MEREDITH GEORGE THOMAS
                              Assistant United States Attorney
                              WV Bar No.10596
                              300 Virginia Street, East
                              Room 4000
                              Charleston, WV 25301
                              Telephone:  304-345-2200
                              Fax:  304-347-5104
                              Email: meredith.thomas@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

It is hereby certified that the foregoing **"MEMORANDUM OF LAW REGARDING REASONABLY FORESEEABLE ECONOMIC RISK"** has been electronically filed and service has been made on opposing counsel by virtue of such electronic filing this 15th day of September, 2014, to:

>Thomas W. Smith, Esquire
>405 Capitol Street
>Suite 701
>Charleston, West Virginia 25301

>/s/Meredith George Thomas
>MEREDITH GEORGE THOMAS
>Assistant United States Attorney
>WV Bar No.10596
>300 Virginia Street, East
>Room 4000
>Charleston, WV 25301
>Telephone: 304-345-2200
>Fax: 304-347-5104
>Email: meredith.thomas@usdoj.gov