## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                            CRIMINAL ACTION NO. 2:14-cr-00116

CHADWICK J. LUSK,

        Defendant.

### MEMORANDUM OPINION AND ORDER

Before the Court is the determination of whether there is a factual basis for Defendant's plea. For the reasons discussed herein, the Court finds that additional information is necessary to make a factual-basis determination. The Court therefore **DIRECTS** the parties to file additional briefing regarding the fiduciary duty prerequisite of honest services fraud.

### *I.  Background*

This case arises out of a fraudulent scheme orchestrated around the Mountain Laurel Mining Complex ("Mountain Laurel"). Mountain Laurel is owned by Mingo Logan Coal Company ("Mingo Logan"), which, in turn, is a wholly owned subsidiary of Arch Coal, Inc. ("Arch Coal"). (ECF 8, Ex. B at 1.)

Defendant was employed at Mountain Laurel between "approximately late 2006 to March 2014," including as "a purchasing manager" beginning "sometime around 2009." (*Id.*) "Part of his duties required [Defendant] to order parts and products needed in the Mountain Laurel operations." (*Id.*)

1

"CM Supply, Co. was a parts vendor for Mountain Laurel, [and] was owned and operated by Gary Roeher." (*Id.*) "Among other products, Mr. Roeher sold crib blocks to Mountain Laurel."[1] (*Id.*)

"From September 2009 through March 2014, Mr. Roeher and [Defendant] carried out a scheme in which [Defendant] would solicit and receive a portion of the profit for all crib blocks sold by CM Supply" for use at Mountain Laurel "in exchange for [Defendant] using his official position to direct crib block sales to CM Supply." (PSR ¶ 25; *see also* ECF 8, Ex. B at 1 ("Beginning sometime around September 2009, Mr. Roeher began paying [Defendant] a portion of the profit that CM Supply received on the sale of crib blocks to Mountain Laurel . . . .").) In the course of this scheme, Defendant "would issue a purchase for crib blocks to CM Supply, as needed in the coal mining operations of Mountain Laurel." (ECF 8, Ex. B at 1.) "CM Supply would deliver the crib blocks and mail an invoice to Arch Coal . . . ." (*Id.*) After Mr. Roeher received payment from Arch Coal, he "usually paid [Defendant] seven-and-one-half percent (7.5%) of the crib block sales price." (*Id.* at 2.) "Between September 2009 until at least March 2014, Mr. Roeher estimates that he paid [Defendant] approximately $230,000 in cash kickbacks as part of [this scheme]." (*Id. But see* PSR ¶ 25 n.7 ("In his April 2, 2014, interview with West Virginia State Police, [Defendant] advised that he only received $70,000 in cash kickbacks from Mr. Roeher.").)

On May 19, 2014, Defendant entered into a plea agreement with the Government. (ECF 8.) In the plea agreement, Defendant agreed to plead guilty to a single-count Information, which charges him with honest services mail fraud and aiding and abetting in violation of 18 U.S.C. §§ 1341, 1346, and 2. (*Id.* ¶ 2; *see id.*, Ex. A (providing the Information).) Defendant entered a written plea of guilty to the single-count Information at a July 21, 2014 hearing. (ECF 4; *see also*

---

[1] "Crib blocks provide roof support in an underground mine." (PSR ¶ 24 n.5.)

2

ECF 7 (Defendant's written plea of guilty).) During this hearing, the Court deferred finding a factual basis for Defendant's plea. (ECF 4.) The Court is currently scheduled to sentence Defendant on April 27, 2015, at 10:00 a.m. (ECF 20.)

## II. Legal Standard

Federal Rule of Criminal Procedure 11 provides that, "[b]efore entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea." Fed. R. Crim. P. 11(b)(3). "[T]he Rule ensures that the court make clear exactly what a defendant admits to, and whether those admissions are factually sufficient to constitute the alleged crime." *United States v. DeFusco*, 949 F.2d 114, 120 (4th Cir. 1991) (citing *United States v. Fountain*, 777 F.2d 351, 355 (7th Cir. 1985), *cert. denied*, 475 U.S. 1029 (1986)). "The requirement to find a factual basis is designed to 'protect a defendant who is in the position of pleading voluntarily with an understanding of the nature of the charge but without realizing that his conduct does not actually fall within the charge.'" *United States v. Mastrapa*, 509 F.3d 652, 660 (4th Cir. 2007) (quoting Fed. R. Crim. P. 11 advisory committee's notes (1966)).

"In determining whether a guilty plea has a factual basis, the district court need not rely only on the Rule 11 plea colloquy." *Id.* Rather, the court "may conclude that a factual basis exists from anything that appears on the record." *Id.* (quoting *DeFusco*, 949 F.2d at 120).

"[T]he district court . . . 'need only be subjectively satisfied that there is a sufficient factual basis for a conclusion that the defendant committed all of the elements of the offense.'" *United States v. Ketchum*, 550 F.3d 363, 366 (4th Cir. 2008) (quoting *United States v. Mitchell*, 104 F.3d 649, 652 (4th Cir. 1997)). However, defendants do not have an "absolute right to have a guilty plea accepted," and the "court may reject a plea in exercise of sound judicial discretion." *Santobello v.*

*New York*, 404 U.S. 257, 262 (1971). "The trial court has wide discretion in determining whether a factual basis exists." *United States v. Morrow*, 914 F.2d 608, 611 (4th Cir. 1990) (citing *United States v. Lumpkins*, 845 F.2d 1444, 1451 (7th Cir. 1988)).

### III.  Discussion

Defendant pled guilty to a single-count Information charging him with honest services mail fraud and aiding and abetting in violation of 18 U.S.C. §§ 1341, 1346, and 2. (ECF 8 ¶ 2.) The elements of mail fraud "are (1) the existence of a scheme to defraud, and (2) the mailing of a letter, etc., for the purposes of executing the scheme." *United States v. Vinyard*, 266 F.3d 320, 326 (4th Cir. 2001); *see* 18 U.S.C. § 1341 (mail fraud statute). "[T]he term 'scheme or artifice to defraud' includes a scheme or artifice to deprive another of the intangible right of honest services." 18 U.S.C. § 1346.

"Although the honest services theory of mail fraud is directed primarily at the deterrence and punishment of corruption among public officials, the courts have consistently recognized the statute's province to encompass dishonest acts perpetrated in private commercial settings." *Vinyard*, 266 F.3d at 326 (citing *United States v. Martin*, 228 F.3d 1, 17 (1st Cir. 2000)). "This recognition of liability within the private sector comprehends that a corporate officer or other private employee may bear a duty of loyalty to his employer." *Id.*

In *Skilling v. United States*, the Supreme Court limited the scope of this "honest services" type of "scheme or artifice" to only include "fraudulent schemes to deprive another of honest services through bribes or kickbacks supplied by a third party who had not been deceived." 561 U.S. 358, 404 (2010). The *Skilling* holding did not expressly address whether honest services fraud includes a fiduciary duty requirement. *See id.* Instead, the Court held "that § 1346 criminalizes

4

*only* the bribe-and-kickback core of the pre-*McNally* case law." *Id.* at 408–09. Nonetheless, prior to this holding, the Court described the "solid core" of the honest services doctrine as "involv[ing] offenders who, *in violation of a fiduciary duty*, participated in bribery or kickback schemes." *Id.* at 407 (emphasis added). Courts that addressed the *Skilling* opinion interpreted it as stating that honest services fraud includes a fiduciary duty requirement. *See, e.g.*, *United States v. Nayak*, 769 F.3d 978, 980 (7th Cir. 2014) (noting that the *Skilling* decision "also held that 'the violation of a fiduciary duty' was a prerequisite to an honest-services fraud conviction" (citing *Skilling*, 561 U.S. at 407–08)); *United States v. Milovanovic*, 678 F.3d 713, 722 (9th Cir. 2012) ("A close examination of the Supreme Court's opinion in *Skilling* reveals that embedded in the Court's holding . . . is the implication that a breach of fiduciary duty is an element of honest services fraud." (citing *Skilling*, 561 U.S. at 408–09)); *United States v. Scanlon*, 753 F. Supp. 2d 23, 25 (D.C.C. 2010) ("*Skilling* made clear . . . that bribery and kickback schemes under § 1346 must involve a breach of fiduciary duty, as this duty establishes the right to one's honest services out of which the victim of § 1346 is defrauded."); *see United States v. Nouri*, 711 F.3d 129, 137 n.1 (2d Cir. 2013) ("The 'existence of a fiduciary relationship' between an employee and employer is 'beyond dispute,' and the violation of that duty through the employee's participation in a bribery or kickback scheme is within the core of actions criminalized by § 1346." (citing *Skilling*, 561 U.S. at 406–07 & n.1)).

The Court agrees with these interpretations of the *Skilling* opinion and finds that the Supreme Court's decision in *Skilling* imposes a requirement in private-sector honest services fraud cases that an employee must have a fiduciary duty to a private-sector entity that was deprived of that employee's honest services. *Cf. Vinyard*, 266 F.3d at 328 (pre-*Skilling* decision adopting the

"reasonably foreseeable harm test," which provides that, to convict a defendant employee of honest services fraud, "the Government 'must prove that the employee intended to breach a fiduciary duty, and that the employee foresaw or reasonably should have foreseen that his employer might suffer an economic harm as a result of the breach'" (quoting *United States v. Frost*, 125 F.3d 346, 368 (6th Cir. 1997))). Accordingly, to convict Defendant of honest services mail fraud, the Government must show that the employee—Defendant—had a fiduciary duty to the private-sector entity—Arch Coal. (*See, e.g.*, ECF 1 ¶ 3 (providing the Information, which alleges, in part, that Defendant "devised and intended to devise a scheme and artifice to defraud and deprive Arch Coal of its right to the honest and faithful services of [Defendant]").)

In order to determine whether Defendant held such a duty, the Court must address the source and scope of fiduciary duties that satisfy the fiduciary duty requirement of honest services fraud—an issue that has challenged numerous courts. *Cf. Skilling*, 561 U.S. at 421 (Scalia, J., concurring in part) (describing "the character of the 'fiduciary capacity' to which the bribery and kickback restriction applies" as "the most fundamental indeterminacy" of honest services mail fraud). The Supreme Court, anticipating this issue, provided the following discussion in a footnote of the *Skilling* opinion:

> Justice SCALIA emphasizes divisions in the Courts of Appeals regarding the source and scope of fiduciary duties. But these debates were rare in bribe and kickback cases. The existence of a fiduciary relationship, under any definition of that term, was usually beyond dispute; examples include public official-public, *see, e.g.*, *United States v. Mandel*, 591 F.2d 1347 (C.A.4 1979); employee-employer, *see, e.g.*, *United States v. Bohonus*, 628 F.2d 1167 (C.A.9 1980); and union official-union members, *see, e.g.*, *United States v. Price*, 788 F.2d 234 (C.A.4 1986). *See generally Chiarella v. United States*, 445 U.S. 222, 233, 100 S. Ct. 1108, 63 L.Ed.2d 348 (1980) (noting the "established doctrine that [a fiduciary] duty arises from a specific relationship between two parties").

561 U.S. at 407 n.41. As such, a "specific relationship," such as "employee-employer," satisfies

the fiduciary duty requirement. *See id.* (citations omitted).

Courts also recognize a comparable group of fiduciary relationships that satisfy the fiduciary requirement of honest services fraud. In *United States v. Scanlon*, the D.C. Circuit explicitly rejected the defendant's argument that footnote 41 of the *Skilling* opinion provides the *only* three types of relationships that satisfy Section 1346's fiduciary duty requirement. 753 F. Supp. 2d 23, 26 (D.C.C. 2010) ("[A]t no point did *Skilling* hold that these three fiduciary relationships marked the outer boundaries of § 1346."). The *Scanlon* court provided the relationships of "attorney-client, doctor-patient, or stockbroker-customer" as additional examples of relationships that satisfy the fiduciary duty requirement. *Id.* at 25; *see also United States v. Lupton*, 620 F.3d 790, 804–05 (7th Cir. 2010) (post-*Skilling* decision affirming Section 1346 conviction of real-estate broker who defrauded a client). *See generally United States v. Rybicki*, 354 F.3d 124, 142 n.17 (2d Cir. 2003) (noting, in a pre-*Skilling* decision, that "[a]lthough the bulk of the pre-*McNally* honest-services cases involved employees, we see no reason the principle they establish would not apply to other persons who assume a legal duty of loyalty comparable to that owed by an officer or employee to a private entity"). These related groups of fiduciary relationships share a similar characteristic as the three categories provided by the Supreme Court in *Skilling*—a direct (i.e. "specific") fiduciary relationship between the fiduciary and the harmed entity or person.[2] *Cf. Chiarella*, 445 U.S. at 233 (stating that "the established doctrine [is] that [a fiduciary] duty arises from a specific relationship between two parties").

---

[2] Following *Skilling*, at least one court found that a different, broader category of fiduciary-like relationships satisfy the fiduciary duty requirement of Section 1346. In particular, in *United States v. Milovanovic*, the Ninth Circuit held that, to prove an honest services mail fraud offense, the Government must show either a strict fiduciary relationship or "a trusting relationship in which one party acts for the benefit of another and induces the trusting party to relax the care and vigilance which it would ordinarily exercise." 678 F.3d 713, 724 (9th Cir. 2012). The Court is not persuaded by the Ninth Circuit's analysis in *Milovanovic*, as it substantially deviates from the "specific relationship" nexus provided by the Supreme Court in *Skilling* and the above-referenced related cases.

7

Turning to the instant case, the Court finds that there are substantial questions as to whether Defendant owed a fiduciary duty to Arch Coal sufficient to satisfy the fiduciary duty prerequisite of honest services mail fraud. The record shows that, beginning sometime in 2009, Defendant was the "purchasing manager at Mountain Laurel." (PSR ¶ 24; *see* ECF 8, Ex. B at 1 ("Since sometime around 2009, [Defendant] worked as a purchasing manager."); PSR ¶ 31 n.8 (stating that Defendant was the "purchasing warehouse manager at [Mountain Laurel]").) However, the record does not indicate whether Defendant was directly employed by Mingo Logan—the owner of Mountain Laurel—or Arch Coal—the corporate parent of Mingo Logan and the entity that was allegedly deprived of Defendant's honest services. (*See* ECF 1 ¶ 3 (providing the Information, which alleges that Defendant "devised and intended to devise a scheme and artifice to defraud and deprive Arch Coal of its right to the honest and faithful services of [Defendant]").) As such, the Court cannot determine whether Defendant had the requisite fiduciary duty to Arch Coal arising out of his employment as a purchasing manager. *See Skilling*, 561 U.S. at 407 n.41 ("The existence of a fiduciary relationship, under any definition of that term, was usually beyond dispute; examples include . . . employee-employer . . . ." (citing *Bohonus*, 628 F.2d 1167)). Similarly, the record does not indicate whether Defendant had any specific relationship with Arch Coal, apart from his employment, that would give rise to a fiduciary duty sufficient to satisfy the fiduciary duty prerequisite of honest services fraud. *See, e.g.*, *Chiarella*, 445 U.S. at 233 (noting the "established doctrine that [a fiduciary] duty arises from a specific relationship between two parties").

8

Accordingly, the Court requires additional briefing from the parties to determine whether Defendant had the requisite fiduciary duty to Arch Coal necessary to find a factual basis for Defendant's plea of guilty to honest services mail fraud.

### IV.  Conclusion

For the reasons discussed above, the Court **DIRECTS** the parties to file briefing regarding whether Defendant owed a fiduciary duty to Arch Coal sufficient to satisfy the fiduciary duty prerequisite of honest services mail fraud no later than May 8, 2015. If the Government fails to prove that Defendant owed the requisite fiduciary duty to Arch Coal, the Court will reject Defendant's plea. *See Santobello v. New York*, 404 U.S. 257, 262 (1971) (stating that a "court may reject a plea in exercise of sound judicial discretion").

For these reasons, the Court **CONTINUES** the sentencing hearing for **May 20, 2015**, at **2:00 p.m.**

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to the Defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.


ENTER:        April 21, 2015


THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE

9